**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Case No. 6:17-cr-39-JDK-JDL |
| MACARIO PINEDA (4) | § § § | |

**MEMORANDUM OPINION**

On January 30, 2020, the Court sentenced Defendant Macario Pineda to a term of imprisonment to be followed by a period of supervised release. The Court also overruled-in-part and sustained-in-part three objections raised by Defendant to the Presentence Investigation Report (PSR). This Order explains the reasons for the Court's ruling.

**BACKGROUND**

Defendant pleaded guilty to Count 1 of the Information, which charged him with violating 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(B)(vii) (Conspiracy to Manufacture and Distribute and Possess with Intent to Manufacture and Distribute 100 or more Marijuana Plants). Defendant's initial PSR calculated the base offense level as 30, holding him accountable for 2,200 kilograms of marijuana. *See* USSG § 2D1.1(a)(5). The initial PSR then increased Defendant's offense level by two for possessing a dangerous weapon pursuant to USSG § 2D1.1(b)(1); made no adjustment for Defendant's role in the offense pursuant to USSG § 3B1.2; and reduced the offense level by three for acceptance of responsibility pursuant to USSG § 3E1.1. This resulted in a total offense level of 29. The initial PSR also reported two prior convictions, one for illegal entry in April 2015 and one for possession of marijuana in California in November 2018. Defendant received one criminal history point for each conviction, resulting in a criminal history category of II pursuant to USSG Ch.5, Pt.A.

1

Based on a total offense level of 29 and a criminal history category of II, the initial PSR stated that the advisory guideline imprisonment range for Defendant was 97 to 121 months.

**ANALYSIS**

On November 12, 2019, Defendant filed written objections to the initial PSR. He objected to paragraph 37 for including the 2-level enhancement for a dangerous weapon pursuant to USSG § 2D1.1(b)(1), objected to paragraph 39 for failing to include a reduction in the offense level because of his minor role pursuant to USSG § 3B1.2, and objected to the calculation of the criminal history score. The Court addresses each objection in turn.

**A.**

Defendant first objected to the 2-level enhancement for possessing a dangerous weapon. He argued that the mere fact "a .380 pistol and a pellet gun were located in a tent[]" in the area where he was seen watering marijuana plants was insufficient to support a finding that Defendant "possess[ed]" those weapons. Docket No. 297 at 1.[1] The Government responded that the location of the weapons, along with two photographs showing Defendant with a .380 pistol, were sufficient to prove Defendant's possession. Docket No. 301 at 3–4. The Court sustained the objection.

The adjustment under USSG § 2D1.1(b)(1) applies when a defendant possesses a dangerous weapon in a drug offense. *See* USSG § 2D1.1(b)(1) ("If a dangerous weapon (including a firearm) was possessed, increase [the base offense level] by 2 levels."). The commentary to the Guidelines explains that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1(b)(1), comment (n. 11). Interpreting these provisions, the Fifth Circuit has held that the Government

---

[1] Defendant did not argue that a pellet gun was not a dangerous weapon under USSG § 2D1.1(b)(1). *See United States v. Reyna-Esparza*, 777 F.3d 291, 293 (5th Cir. 2015) ("The Guidelines commentary [ ] expressly provides that a pellet gun is considered to be a dangerous weapon[.]") (citing USSG § 1B1.1, comment. (n. 1(G)).

2

must first prove by a preponderance of the evidence that "the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." *United States v. Salado*, 339 F.3d 285, 294 (5th Cir. 2003); *see also United States v. King*, 773 F.3d 48, 53 (5th Cir. 2014). The Government may do so by showing "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010) (per curiam) (internal quotation marks omitted). Once the Government has satisfied its burden, the defendant may avoid the enhancement only by showing that "it was clearly improbable that the weapon was connected with the offense." *Ruiz*, 621 F.3d at 396.

Here, the Court found that the Government did not meet its burden. The description of where Defendant was seen in relation to the pistol and pellet gun was vague at best, and confusing and contradictory at worst. The PSR described a very large area, including "a large clear-cut area" where Defendant was observed watering marijuana plants and separately an "encampment" with "tents." *See* Docket No. 304 at ¶ 11, 14. The PSR stated that the weapons were found in the "tents" but failed to describe where the tents were located or whether they were near the "clear-cut area" where Defendant was observed. *See id*. The record lacked any photographs or maps, and the descriptions of the area were imprecise. *See generally id*. The PSR mentioned "west and east locations," which the Court presumed to mean west and east of County Road 336, and referenced various areas that were several hundred yards from one another. *Id*. at ¶¶ 18–22. The PSR also indicated that other individuals had lived or spent time in the area. *See id*. at ¶¶ 14, 21. On this record, it was impossible to determine whether the weapons were found a few yards from Defendant or on the other side of County Road 336, presumably several hundred yards away. If the latter, Defendant could not be said to have "possessed" the weapons. Indeed, they would be

3

more like the "unloaded hunting rifle in the closet" that should not trigger application of USSG § 2D1.1(b)(1), according to the Commentary. *See, e.g.*, USSG § 2D1.1(b)(1), comment (n. 11).

The two cell phone photographs cited by the Government did not change the analysis. One photograph showed Defendant holding "what appears to be the Jennings .380 caliber handgun," but the Government acknowledged that "there was no GPS data available to show where the photograph was taken." Docket No. 301 at 3. The other photograph showed "an unidentifiable hand holding what appears to be the Jennings .380 caliber handgun," taken approximately two minutes before the other photograph. *Id.* at 3–4. This photo, however, also lacked any data indicating where it was taken. The photos were therefore insufficient evidence to prove that Defendant possessed the weapon for purposes of the 2-level enhancement. *See United States v. Baker*, 78 F. App'x 318, 323 (5th Cir. 2003).

Accordingly, the Court sustained the objection.

**B.**

Defendant next objected to paragraph 39 for failing to reduce the offense level based on his minimal role pursuant to USSG § 3B1.2. Docket No. 297 at 2–4. Defendant sought a 3-level or 4-level reduction. The Government conceded that a 3-level decrease appropriately reflected Defendant's role in the case. Docket No. 301 at 6. The Court sustained-in-part the objection.

USSG § 3B1.2. states: "In cases falling between [minimal participation in subsection] (a) and [minor participation in subsection] (b), decrease [the offense level] by 3 levels." After considering the non-exhaustive list of factors stated in USSG § 3B1.2, the Court agreed with the Government's determination and sustained-in-part Defendant's objection, granting a 3-level decrease. *See* USSG § 3B1.2, comment (n. 3).

**C.**

Finally, Defendant objected to the calculation of his criminal history score. Defendant made three arguments related to the score, which the Government did not address in its response. *See generally* Docket No. 301. The Court overruled the objection.

First, Defendant argued there were insufficient facts in paragraphs 49 and 50 of the PSR to verify the validity and outcome of the alleged offenses. Docket No. 297 at 4–5. Relying on the addendum to the PSR, which showed these records were obtained from the National Crime Information Center and from a Pretrial Services Report from California, the Court found these paragraphs contained information which bore "sufficient indicia of reliability to support its probable accuracy." *See United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012).

Second, Defendant argued that the criminal history point assessed to Defendant in paragraph 49 improperly relied on a juvenile offense because the PSR incorrectly stated his date of birth. Docket No. 297 at 4–5. The Court agreed that the PSR was unclear regarding Defendant's date of birth, but it did not matter here. USSG § 4A1.2(d) states that the sentencing court should "add 1 point under §4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense." Thus, regardless whether the April 2015 offense occurred while Defendant was a minor, the criminal history point was still attributable to Defendant pursuant to USSG § 4A1.2(d) because the sentence was imposed for that offense in 2015—less than five years before Defendant's commencement of the instant offense.

Third, Defendant argued that paragraph 50 of the PSR alleged "an offense to have occurred on November 29, 2018, which would place it after said dates of the instant conspiracy" and was therefore excludable. Docket No. 297 at 5. USSG § 4A1.2(a) states: "A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant

5

offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense." Here, the November 2018 offense referenced in paragraph 50 occurred after the instant offense but before sentencing, and there is nothing to suggest that it was for the same conduct giving rise to the instant offense. Accordingly, this criminal history point was attributable to Defendant pursuant to USSG § 4A1.2(a).

## CONCLUSION

The Court sustained Defendant's first objection regarding USSG § 2D1.1(b)(1), sustained-in-part the second objection regarding USSG § 3B1.2, and overruled the third objection regarding Defendant's criminal history points. This resulted in a total offense level of 24 and criminal history category of II, which provided for an advisory guideline range of 57 to 71 months. Moreover, because the Court determined that the 2-level increase under USSG § 2D1.1(b)(1) did not apply, Defendant was eligible for a 2-level reduction under the expanded safety valve criteria of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 402. The Court found that a variance was appropriate under the facts here, and thus Defendant's total offense level was 22, his criminal history category was II, which resulted in an advisory guideline range of 46 to 57 months of imprisonment.

So **ORDERED** and **SIGNED** this **3rd** day of **February, 2020.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE